IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CLAYTON HOWARD,

      Plaintiff,      Civil No. 03-792-AA

      v.      ORDER

JOE KILKA, et al.,

      Defendants.

AIKEN, District Judge.

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections filed a complaint under 42 U.S.C. § 1983, alleging *inter alia* that defendants violated his constitutional rights with respect to the conditions of his confinement on two occasions while he was housed at the Snake River Correctional Institution. Plaintiff alleges that on August 2, 2002, he was placed in a bare cell with only a pair of underwear and that on September 24, 2002, he was placed on

1 - ORDER

a 24 hour bedding restriction.[1]  Plaintiff alleges that defendants' conduct violated an injunction against the use of "strip status" issued by Judge Panner and violated the Ninth Circuit's holding in LaMaire v. Maass, 12 F.3d 1444 (9th Cir. 1993).

Plaintiff seeks damages and injunctive relief.  Before the court are cross motions for summary judgment (#38) and (#70).

On February 4, 2005 an evidentiary hearing was held regarding the parties' motions for summary judgment.  The hearing was continued on February 15, 2005.  Based on the evidence adduced at that hearing and the exhibits and argument in support of the motions, I find as follows.

As noted in the court's previous Order (#79), parsing the facts giving rise to plaintiff's claims is difficult due in part to the fact that some of plaintiff's allegations are inconsistent.  The evidentiary hearing on the parties' motions was somewhat helpful. Plaintiff and all of the witnesses that testified at the hearing were credible, but gave contradicting and sometimes *self-contradicting* testimony.

Plaintiff's statement of facts disputes some of defendants' statement of facts.  However, I find from a

---

[1] The record reflects that plaintiff's bedding restriction actually occurred on September 27, 2002, and that the restriction was for 48 hours.

2 - ORDER

careful review of the entire record before the court that these disputes of fact with respect to details of the incidents giving rise to plaintiff's claims are not material to the resolution of any claim before the court. The *material* facts set forth below are not disputed.

Plaintiff was placed on close supervision status[2] in the disciplinary Segregation Unit on August 2, 2002 at about 8:00 p.m. Plaintiff contends that he was put on close supervision for "false information" and "extortion." Lt. Peterson, the defendant responsible for plaintiff's placement on close supervision testified that he place plaintiff on close supervision because of threat made towards harming another inmate if staff doubled celled another inmate with him. The testimony and exhibits indicate that plaintiff made a remark that he would "take care of business" if he was doubled celled. This comment in the context of the situation[3] could reasonably be interpreted as a threat. The fact that the "take care of business" remark does not appear in any official report of the incidents giving rise to plaintiff's claims is immaterial.

The record reflects that plaintiff was also given a

---

[2]In a cell with only underwear, and possibly toilet paper and shower shoes.

[3]Plaintiff concedes that he was vigorously arguing against being double celled.

3 - ORDER

misconduct report for false information, disrespect and extortion. However, plaintiff's placement on close supervision status was a result of plaintiff's implied threat of harming another inmate.

There is no factual dispute that plaintiff was issued underwear upon his close supervision placement.[4] Plaintiff alleges that he was not provided toilet paper or shower shoes when he was first place on close supervision status.

According to the testimony of Lt. Peterson and Lt. Turner and other exhibits, neither Lt. Peterson or Lt. Turner would have tolerated staff denying an inmate toilet paper. Lt. Peterson testified that inmates in DSU are given a "wrap" of toilet paper and will be issued more upon request.

During the evidentiary hearing, plaintiff offered testimony from Mr. James Davenport that he overheard a conversation between plaintiff and Officer Palmer regarding toilet paper. Mr. Davenport stated that Office Palmer, who is not named as a defendant in this action, refused to provide plaintiff toilet paper upon his request. There is no evidence in the record that suggests that Lt. Petersen or Lt. Turner

---

[4]Plaintiff has consistently taken inconsistent position as to whether the underwear was dry when issued. In his complaint he alleges that the underwear became wet when he removed them to wipe himself after defecating and then rinsed them out in the toilet. Whether the clothing was wet or dry is immaterial to plaintiff's constitutional claims.

4 - ORDER

were aware that plaintiff may have been without toilet paper.

If plaintiff was temporarily denied toilet paper, it was an unacceptable mistake and contradicts the prison's policy and usual practice. However, for the reasons discussed below, the possible, temporary deprivation of toilet paper did not violate plaintiff's constitutional rights. Moreover, the deprivation, if any, was not the result of any acts of any defendant named in this action and was without defendants' knowledge.

Defendants contend that at the time plaintiff was put in close supervision status staff "misunderstood" the administrative rule regarding the restriction and removal of personal items and were relying on Segregation Rule 291-011-0064 which allows staff to temporarily deprive an inmate of any service or activity, as applicable when the inmate *may be likely* to use them to destroy or damage property, obstruct security or threatens physical harm to himself or others. Rule 291-011-0064 further provides that "[a]ny items withheld shall be returned at the earliest possible time when the basis for removal has ceased to exist."

Defendants' concession regarding the misinterpretation or misapplication of Rule 291-011-064 implies that the circumstances leading to plaintiff's close supervision status may not have justified the restriction on plaintiff's "full

5 - ORDER

issue" (jumpsuit and bedding). Thus, arguably, plaintiff was initially improperly denied his bedding and clothing.

After approximately 2 hours of close supervision, plaintiff was found naked in his cell with his underwear hanging from the ceiling. Because defendant Turner "was aware that inmates have used issued underwear to hang themselves and ... aware that inmate hangings have been accomplished using air vents," <u>see</u>, Affidavit of Matthew J. Turner, p. 4, plaintiff was evaluated by nursing staff. When medical staff conducted their assessment of plaintiff, plaintiff reportedly stated in response to their questions "I can't say that I won't hurt myself." Defendants' Exhibit 101, Attachment No. 9 at p. 2 (entry of August 2, 2002 at 2230 hrs.). After the medical assessment and interview, plaintiff was placed on close *observation* status with a safety smock. At this point, plaintiff was no longer on close supervision status with security but on close observation status by medical staff. When nursing staff was satisfied that plaintiff was not going to harm himself, plaintiff was removed from close observation status on August 3, 2002 at 4:45 p.m. and returned to a DSU cell with all clothing and personal items.

Based on these facts, I find that although plaintiff may have been improperly denied clothing (except for underwear)

for a period of two hours,[5] plaintiff's behavior during that time justified the continued deprivation under Rule 291-011-064 until the termination of his close observation status approximately 18 hours later.[6]

Plaintiff argues that he was denied pain medication during the period of his close observation. At the evidentiary hearing, R.N. Kathy Ryals testified that she did not provide plaintiff with pain medication on August 3, 2002 while he was on close observation status. The pain medication was an over the counter percogesic prescribed for plaintiff's back pain. Ms. Rayls indicated that there would not have been a reason not to have given plaintiff the pain medication and that his placement on close observation status would not have kept her from giving him the medication. Ms. Ryals suggested that the probable explanation for plaintiff not receiving the medication upon his request was that he was a recent transfer and the medication may not have been on the medication cart at the time of his request.

Plaintiff states in his Concise Statement of Facts that

---

[5] Defendants concede that security staff's "error in the proper application of OAR 291-011-064 to plaintiff lasted about two hours. See, Defendants' Memorandum in Support of Summary Judgment (#39) p. 3.

[6] Defendant Turner's affidavit indicates that even after plaintiff was issued a smock, he refused to wear it. Affidavit of Matthew J. Turner, p. 4.

7 - ORDER

the denial of his pain medication occurred at 12:00 p.m. and that he was given the medication at 4:45 p.m. Thus, unfortunately, plaintiff went a short period of time without pain medication. However, the denial of pain medication is not a claim alleged in plaintiff's complaint nor did he name Ms. Rayls as a defendant.[7]

On September 27, 2002, while in DSU, plaintiff was put on 48 hour bedding restriction. This meant that during the daytime hours plaintiff's bedding was removed. Defendants' affidavits state that bedding was returned to plaintiff and was available for his use from 10:00 p.m. through 6:00 a.m.

Plaintiff alleges in his complaint that his bedding was returned each evening at 10:00 and collected at 6:00 the following morning. Complaint at p. 20. Plaintiff also "admits in its entirety" defendants' statement of fact #30 which states: "A bedding restriction deprived plaintiff of the use of his blanket, sheets, mattress, pillow and pillow case during the day. Each evening plaintiff would get all his bedding items back for his use between 10:00 p.m. and 6:00 a.m." See, Plaintiff's Response to defendants' concise statement of facts (#73) p. 5. However, plaintiff's

---

[7] plaintiff sought to amend his complaint to add claims against Ms. Ryals after summary judgment motions had been filed and fully briefed. Plaintiff's request to amend was denied for the reasons set forth in the court's Order (#79).

8 - ORDER

statement of fact alleges "[n]o notation exists to support plaintiff was given bedding from 10:00 to 6:00 a.m. as alleged, as it did not occur." Statement of Facts (#17) p. 11.

The evidentiary hearing did little to resolve the inconsistency in plaintiff's position regarding the bedding restriction. In response to a question by the court, plaintiff indicated that he received the bedding back on the first night but not the second night.

Defendants' statement of facts states that plaintiff was put on restricted bedding because he had torn up his sheets. Plaintiff disputes this fact. However, I find for the reasons set forth below that the bedding restriction did not violate plaintiff's constitutional rights. Therefore, this dispute is not material.

In addition, the disciplinary action against plaintiff for the torn bed-sheets was dismissed and he was not sanctioned because the sheets were disposed of and not available as evidence. Therefore, plaintiff has no due process or any other cause of action based on this incident.

**Physical injury requirement:** Courts have traditionally imposed a requirement of injury on constitutional claims. In 1996, Congress imposed a statutory requirement when it enacted the Prison Litigation Reform Act, 42 U.S.C. § 1997(e).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a plaintiff must suffer physical injury in order to recover damages. Section 803 provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."

The Ninth Circuit has not yet specifically addressed what constitutes "physical injury." The Fifth Circuit has held: "In the absence of any definition of 'physical injury' in the new statute, we hold that the well established Eighth Amendment standards guide our analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering. That is the injury must be more than *de minimis*, but need not be significant." Siglar v. Hightower, 112 F.3d 191, 193 (5ht Cir. 1997), citing Hudson v McMillian, 503 U.S. 1, 10 (1992).

The only apparent exception to the physical injury requirement is in the area of the First Amendment. For First Amendment claims, the Ninth Circuit has held that physical injury is irrelevant. See, Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998).

Plaintiff alleges that as a result of the first incident giving rise to his claims he "was cold, in physical pain for

sleeping on concrete for two days[8] and psychologically tramatized (sic), suffered anxiety and depression." Complaint, p. 19. Plaintiff's Statement of Facts (#71) states that during the period of his "suicide watch" he was temporarily deprived of his pain medication for pain in his neck, back and arms and that he was in "excruciating pain" from a pinched nerve. Plaintiff further alleges concerning the second incident: "I was in a extremely cold cell, suffering physical and psychological pain." Id., p. 20.

As noted above, plaintiff's was temporarily deprived of an over-the-counter percogesic prescribed for back pain. However, there is nothing in the record to establish that plaintiff suffered more than a *de mimimis* injury or discomfort as a result of that deprivation. I find that plaintiff's allegations of "anxiety and depression" are insufficient to constitute physical injuries for purposes of the PLRA.[9]

**Eight Amendment:** Assuming *arguendo* that the physical discomforts alleged by plaintiff are sufficient to constitute

---

[8]In his statement of facts, plaintiff alleges that this incident lasted from 8:00 p.m. on August 2, 2003 until 6:00 the following day. I note that the bedding deprivation associated with this incident could not have lasted for "2 days."

[9]The record reflects that plaintiff seems to have a proclivity for removing his clothing and remaining naked in his cell. See, Defendants' Exhibit 101, Attachment No. 3. Plaintiff's voluntary removal of his clothing for periods of time contradicts his claim that he suffered an extreme deprivation as a result of a cold cell on August 2, 2002.

11 - ORDER

a physical injury for purposes of the PLRA, I find that they are insufficient to support a claim under the Eighth Amendment.

The Eighth Amendment proscribes punishments which involve the "unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Gregg v. Georgia, 428 U.S. 153, 173 (1976).

In order to establish liability under the Eighth Amendment, plaintiff must prove two distinct components: 1) that the plaintiff was actually suffered an extreme deprivation or is been placed at a substantial risk of suffering a significant injury; and 2) that the defendants acted with a sufficiently culpable state of mind (deliberate indifference). Wilson v. Seiter, 501 U.S. 294, 298 (1991); LeMaire v. Maass, 12 F.3d 1444, 1451 (9th Cir. 1993); May v. Baldwin, 109 F. 3d 557, 565 (9th Cir. 1997).

"The Eighth Amendment does not apply to every deprivation or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving "serious injury inflicted by prison officials acting with a culpable state of mind. We have described these twin elements as the "objective" and "subjective" components of an Eighth Amendment prison claim." Hudson v. McMillian, supra, citing Wilson v. Seiter, 501 U.S. 294, 298 (1991).

There is a *de mimimis* level of imposition with which the Constitution is not concerned. Ingraham v. Wright, 430 U.S. 651, 674 (1977). "Extreme deprivations are required to make out a conditions of confinement claim. Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, supra, t p. 8-9, quoting Rhodes v. Chapman, supra at p. 347 and Wilson v. Seiter, supra at 298.

In this case, plaintiff's Eighth Amendment claim fails because all of plaintiff's claimed injuries from the August 2, 2002 and September 27, 2002, incidents are either emotional or *de mimimis*. Plaintiff has failed to establish any extreme deprivation or risk of significant injury from any of the alleged conditions of his confinement. The matters complained of by plaintiff, specifically the temporary deprivation of usual prison clothing and bedding, are the type of "routine discomfort" that is part of the penalty that criminal offenders pay for their offenses against society, and not sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, supra.

Courts have held that conditions of confinement far worse

than those alleged by plaintiff in this case did not violate the Eighth Amendment. See, Holloway v. Gunnel, 685 F.2d 150, 156 (5th Cir. 1982); McCary v. Burrell, 516 F.2d 357, 368 (4th Cir. 1975); Baker v. Vasquez, 1991 U.S. Dist. Lexis 18173, n. 14 (1991). See also, Eccleston v State of Oregon, et al., Civ. No. 03-6148-KI (Defendants' Exhibit 103).

Although the temporary deprivation of pain medication was unfortunate and undoubtedly caused plaintiff more than usual discomfort from his ailments, there is nothing in the record (other than plaintiff's subjective complaints) to suggest any injury or aggravation of an existing injury. It is undisputed that plaintiff was being monitored by medical staff.

Because I find that plaintiff has failed to establish the objective prong of the two part Eighth Amendment analysis, it is unnecessary to address whether or not plaintiff has demonstrated the subjective component of the test, that is that defendants acted with deliberate indifference to plaintiff's deprivation or injury.

However, I note that to prove deliberate indifference, plaintiff must demonstrate that defendants were subjectively aware of an obvious serious risk of harm and ignored that risk. Farmer v. Brennan, 511 U.S. 825 (1994). Where defendants truly do not believe that a serious risk is present, there is no deliberate indifference. Id. at 884.

In this case, a review of the record indicates that defendants responded appropriately to plaintiff's conduct and were not deliberately indifferent to any obvious serious risk of harm. To the contrary, defendants' response to plaintiff's behavior indicates that the actions they took were reasonably necessary to prevent a potential risk of self-inflicted harm to plaintiff.

**Qualified Immunity:** Based on my findings above, I find that defendants are entitled to qualified immunity from liability in damages because they did not violate plaintiff's clearly established constitutional rights, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Act Up!/Portland v. Bagley, 988 F.2d 686 (9th Cir. 1993). I find that a reasonable correctional officer would not reasonably believe that requiring plaintiff to sit in his cell for two hours in his underwear, denying him an over the counter pain medication or denying him bedding during the day would constitute a violation of his constitutional rights. There is no evidence in the record that Lt. Peterson or Lt. Turner were aware of the injunction issued by Judge Panner regarding close supervision placement under OAR 219-011-0064 or the Ninth Circuit's modification of that injunction in LaMaire v. Maass.

Defendants concede that a mistake regarding the proper application of OAR 219-011-0064 was made in the initial phase

of plaintiff's confinement in DSU. However, there is no evidence to suggest that defendants acted with deliberate indifference to a potential risk of serious harm or injury or were otherwise aware that their conduct may have violated plaintiff's constitutional rights.

Plaintiff is no longer incarcerated at the Snake River Correctional facility. Therefore, there is no very significant possibility that is both real and immediate that plaintiff will be harmed in the future by defendants' allegedly unconstitutional practices and he is not entitled to equitable relief. <u>Los Angeles v. Lyons</u>, 461 U.S. 95 (1983); <u>Nelsen v. King County</u>, 895 F.2d 1284, 1250-51 (9th Cir. 1990).

**<u>LaMaire v. Maass</u>:** Plaintiff alleges that defendants' alleged conduct in this case violated Judge Panner's injunction against the use of "strip status" and the Ninth Circuit's holding in <u>LaMaire v. Maass</u>.

In <u>LaMaire v. Maass</u>, 745 F. Supp 623 (D. Or 1990), the district court found that the use of "strip status" (ie. the temporary removal of a prisoner's clothing and property) when used for punishment for misbehavior not connected with the misuse of clothing or property, was unconstitutional. However, Judge Panner further found: "Because inmates misuse clothing, bedding and other property, there can be a legitimate penological justification for temporarily removing

those items from inmates for safety reasons. Therefore, I do not find the removal of clothing, bedding and other property from inmates unconstitutional *per se*. ... [T]here is adequate penological justification for stripping inmates when and for so long as a misuse of clothing and property presents a serious risk to personal safety or of property damage. Otherwise, it lacks a legitimate penological justification and is unconstitutional." Id, at p. 639.

In its injunction, the district court ordered that prison officials only remove clothing or personal property when it posed a serious risk of personal safety or property damage, and also required the prior approval of a psychiatrist if the removal was to be for a period of more than two hours. The court also mandated that when a psychiatrist authorized the removal of such property, the psychiatrist must "personally observe the inmate not less than once every four hours."

In LaMaire v. Maass, 12 F.3d 1444 (9th Cir. 1993) the Ninth Circuit vacated the portion of the district court injunction that required the prior approval and continuing observation of a psychiatrist when applying OAR 291-011-0064. Specifically, the court found: "We have examined the state's rules and procedures in this respect and find that they satisfy the demands of the Constitution. Accordingly, we vacate this part of the district court's injunction and remand

17 - ORDER

with the instruction to the court to rewrite it to require only that the state abide by its own rules governing this aspect of its disciplinary procedures. Id., at p. 1455.

The district holding in LaMaire v. Maass did not enjoin the use of "strip status" as argued by plaintiff. It specifically approved of the procedure as having a legitimate penological justification when properly applied to achieve a specific security need or prevent the risk of property damage or injury. The court found that the use of "strip status" as *punishment* is unconstitutional. The Ninth Circuit affirmed the district court's holding in this regard and merely vacated the district court's requirement of a psychiatrist's approval and involvement in the application of OAR 291-011-0064.

In this case, there is nothing to suggest that defendants applied OAR 291-011-0064 to plaintiff as punishment. Defendants concede that they initially misapplied the rule to plaintiff for approximately 2 hours. However, as discussed above, plaintiff's behavior during that 2 hours justified the continued deprivation under close observation procedures.

In LaMaire v. Maass, the district court found "ample evidence on the record" indicating that strip status was used as punishment for behavior not connected to the misuse of clothing or property. I find that defendants' error in the application of the rule does not constitute ample evidence of

18 - ORDER

the use or application of strip status as punishment. Therefore, I find that plaintiff has failed to establish that defendants violated the district court's injunction or the Ninth Circuit's holding in LaMaire v. Maass.

**Conclusion:** There is no question that a mistake or error in judgment was made by defendants in dealing with a uncooperative inmate. However, for the reasons discussed above, I find that plaintiff has failed to establish a constitutional violation based on defendants' conduct. Although the potentially volatile situation could have been handled better, plaintiff's own conduct caused the incidents to occur and defendants' response were reasonable, and did not violate plaintiff's clearly established constitutional rights. Plaintiff undoubtedly feels that he was subjected to Strip status as punishment. However, plaintiff's feelings in this regard are not supported by the record before the court.

The record reflects that defendants have taken steps to clarify the proper the application of OAR 291-011-0064 by issuing "Guidelines for Close Supervision." Defendants' strict adherence to the guidelines should insure against a reoccurrence of the unfortunate scenario that unfolded in this case.

The unintentional misapplication of the rule in a single instance does not suggest a wide-spread or systematic

unconstitutional practice. As noted by the Circuit Court in LaMaire v. Maass, the record contains nothing to indicate that defendants have not followed court orders in the past. Defendants are advised however that any evidence of future misapplications of the rule or of the use of strip status for non-penological purposes would be a matter of serious concern to the court.

There are not genuine issues of material fact remaining in this case. Defendants are entitled to judgment as a matter of law. Defendants' Motion for Summary Judgment (#38) is allowed; Plaintiff's Motion for Summary Judgment (#70) is denied. This action is dismissed.

IT IS SO ORDERED

DATED this __31__ day of May, 2005.

/s/ Ann Aiken
Ann Aiken
United States District Judge